UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**OWEN SPENDLOVE and JACOB CROSS,**
*individually and as representatives of the class*,

      **Plaintiffs,**

**v.**                                         **Civil Action No. 3:18-cv-00856-REP**

**RAPIDCOURT, LLC,**

      **Defendant.**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL AND FOR RULE 37(c)(1) SANCTIONS

Plaintiffs Owen Spendlove and Jacob Cross, by Counsel, on behalf of themselves and all others similarly situated, pursuant to Rule 37 of the Federal Rules of Civil Procedure, hereby move the Court to compel Defendant RapidCourt, LLC to provide full and complete responses to certain discovery requests and to prohibit RapidCourt from presenting evidence and witnesses not previously disclosed.

Plaintiffs' Counsel certifies that they have met and conferred in good faith with RapidCourt's Counsel in an effort to resolve the issues in this motion.

**I.    Overview**

In this purported class action, Plaintiffs seek to hold Defendant, a national Consumer Reporting Agency ("CRA"), accountable for its willful and systematic violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"). Specifically, Plaintiffs allege that Defendant willfully violated the FCRA by (1) reporting adverse non-conviction information from Virginia older than seven years in violation of § 1681c(a), (2) failing to provide consumers with timely notice of the fact that it furnished an employment report containing adverse information while not following strict procedures designed to ensure that it does not report incomplete or outdated public

records in violation of § 1681(k)(a), and (3) failing to provide full copies of consumers' files upon request in violation of § 1681g. Plaintiffs bring their claims on behalf of several classes, one of which is explicitly limited to Virginia consumers.

RapidCourt filed a Motion to Dismiss or, in the Alternative, to Transfer Venue (ECF No. 25). Plaintiffs resisted and moved the Court to permit jurisdictional discovery (ECF No. 32). On May 3, 2019, the Court denied RapidCourt's motion without prejudice and granted Plaintiffs' motion, ordering that "jurisdictional discovery shall proceed forthwith" but should be complete no later than August 2, 2019 (ECF No. 44). Thereafter, the Parties proposed a Scheduling Order within the parameters set by the Court related to the taking of jurisdictional discovery and subsequent briefing of Defendant's Motion to Dismiss (ECF No. 46). Subsequent Scheduling Orders were entered relating to both class certification and jurisdictional discovery deadlines and which revised the original deadlines established by the Court (ECF Nos. 49, 67).

The precise mechanics of Defendant's RCXpress system, as well as the integration of that system with RapidCourt's other products, is critically important to both jurisdiction and class certification. At least one of Defendant's products generates reports using a database. Defendant alleges that RCXpress uses "direct-to-source" technology that allows Defendant's clients to access court records directly. (ECF No. 16, 16-1). Based solely on its bald assertion of how the technology works, Defendant argues that it lacks sufficient contacts with Virginia for this Court to exercise jurisdiction. RapidCourt refuses to provide any information related to its other, non-RCXpress products, asserting that those products are entirely irrelevant here. Pursuant to the Court's order allowing jurisdictional discovery (ECF No. 46), Plaintiffs must be allowed to probe behind Defendant's self-serving declaration and user interface to determine precisely how the

technology at issue works, how it interfaces with RapidCourt's other products, and how much contact Defendant has with Virginia sources as the technology operates.

RapidCourt similarly refused to produce information necessary for class certification. RapidCourt asserts that it has not retained putative class member information. Plaintiffs know from third parties that this information, if not retained by RapidCourt, is likely to have been retained by RapidCourt's customers. Plaintiffs have requested RapidCourt's database, as well as information related to RapidCourt's customers and the data provided to those customers. Even if RapidCourt cannot identify specific consumers on which it has assisted customers to obtain records, it can identify the order numbers and sale information, as well as the customer to whom the information was sold. Armed with this information, Plaintiffs can identify the putative class. Yet, RapidCourt has refused to provide this information.

Plaintiffs move the court to impose (1) the sanction of exclusion that is automatically imposed under Fed. R. Civ. P. 37(c)(1) when a party fails to disclose or produce information under Rule 26(a) or (e); (2) an Order compelling production of documents under Fed. R. Civ. P. 37(a); and (3) for other relief under Fed. R. Civ. P. 37(b) for the Defendant's failure to comply with a Court Order. Specifically, Plaintiffs respectfully request that the Court exclude from Defendant's use in any motion or at trial (a) any evidence to counter Plaintiffs' arguments that RapidCourt and its related entities are one cohesive entity; (b) any witness or document in support of its argument that it is inconvenient to litigate in Virginia; (c) any evidence that it does not collect Virginia records through third-parties; (d) any evidence that RapidCourt has an FCRA compliant procedure; and (e) any evidence or argument that accuracy is an individualized question.

## II.     Discovery Disputes

### 1.     Background

On May 17, 2019, RapidCourt served its Initial Disclosures, in which it identified the following individuals as having discoverable information: Plaintiff Owen Spendlove; Plaintiff Jacob Cross, Douglas Henry, Manager and President of RapidCourt, LLC; and Representatives of non-party Checkr, Inc. (a CRA that ran a consumer report on Plaintiffs using RapidCourt's services). During their meet-and-confer conference, Plaintiffs warned RapidCourt of the potential consequences of withholding non-privileged information, specifically the identity of individuals with discoverable information, but that did not spur Defendant to meet its obligations to comply with Plaintiffs' discovery requests and its Rule 26 obligations. RapidCourt did not amend until ordered to do so by the Court (ECF No. 58). RapidCourt amended its Initial Disclosures on July 26, 2019, and disclosed five additional individuals.[1]

On May 8, 2019, Plaintiffs served RapidCourt with Plaintiffs' First Set of Interrogatories and First Set of Document Requests. RapidCourt responded on June 7, 2019. Plaintiffs met and conferred with RapidCourt's prior Counsel no less than two times and with current Counsel at least once. Those meet and confers resulted in RapidCourt supplementing its Interrogatories a total of four times: on June 14, 2019, June 21, 2019, July 3, 2019 and finally on August 20, 2019.[2] With regard to Plaintiffs' First Set of Document Requests, RapidCourt supplemented on June 20, 2019 and August 20, 2019.[3] As explained below, in spite of this supplementation, RapidCourt has failed

---

[1] RapidCourt's amended Initial Disclosures are attached hereto as Exhibit 1.
[2] Defendant's Objections and Third [sic] Supplemental Answers to Plaintiffs' First Set of Interrogatories are attached as Exhibit 2.  Although marked as the third supplement, the production is actually the fourth supplement.
[3] Defendant's Objections and Second Supplemental Responses to Plaintiffs' First Set of Requests for Production is attached as Exhibit 3.

to fully and completely respond to critical discovery that goes to the heart of Plaintiffs' claim that RapidCourt is subject to personal jurisdiction in Virginia. In short, RapidCourt has attempted to stonewall Plaintiffs by using a number of tactics to obstruct discovery and delay. RapidCourt has used general objections, answering each request "subject to and without waiving" those objections, and has generally failed to timely respond to discovery. Such conduct has been admonished in this Circuit and other jurisdictions across the country because it is a conditional response that leaves the requesting party uncertain as to whether the request has actually been fully answered. RapidCourt has also taken the absurd position that any request regarding specific jurisdiction is limited to RapidCourt's specific transaction relating to Spendlove and Cross, thereby refusing Plaintiffs' request to produce information relating to RapidCourt's contacts with Virginia such as contacts with customers in Virginia, marketing in Virginia or contracts with public-record vendors.

On May 31, 2019, Plaintiffs served RapidCourt with Plaintiffs' Second Set of Interrogatories and Plaintiffs' Second Set of Requests for Production. RapidCourt responded on July 1, 2019. The parties met and conferred (both with old and new Counsel), and RapidCourt supplemented on August 20, 2019.[4] Again, RapidCourt has attempted to delay and obstruct discovery and failed to respond to critical inquiries related to class certification. It again uses impermissible general objections, answering each request "subject to and without waiving" those objections. Specifically, as to class certification, RapidCourt asserts that will not search for information necessary to ascertain class members and that it has not retained records necessary to do so. This information is available from RapidCourt's customers, but RapidCourt has refused to identify its customers or provide communications with customers, which would allow Plaintiffs to

---

[4] Defendant's Objections and Responses to Plaintiffs' Second Set of Interrogatories is attached as Exhibit 4 and Defendant's Objection and Responses to Plaintiffs' Requests for Production are attached as Exhibit 5.

obtain and ascertain the class. RapidCourt has also refused to produce contracts with those customers, which Plaintiffs are confident will reveal that the information Plaintiffs seek is available to RapidCourt should it ask.

On June 19, 2019, Plaintiffs served RapidCourt with Plaintiffs' [Third] Set of Interrogatories and [Third] Set of Request for Production. RapidCourt responded on July 19, 2019, and supplemented its responses to Plaintiffs' Request for Production on August 20, 2019.[5] Also on June 18, 2019, Plaintiffs made a Rule 34 Request for Plaintiffs' Counsel and proposed expert witness to access and inspect RapidCourt's property, specifically to access RapidCourt's user interface and software in order to evaluate how RapidCourt's system operates.[6] The Parties met and conferred on Plaintiffs' request, and RapidCourt responded on August 20, 2019. Plaintiffs requested access to RapidCourt's system, for example by requesting login credentials to RapidCourt's system, so that Plaintiffs could view the manner and way in which customers accessed RapidCourt's records. Plaintiffs also requested to inspect the underlying code that runs the underlying software and source code that determines how the system operates. Again, RapidCourt has only agreed to a very limited review of RapidCourt's system. RapidCourt's refusal on this point frustrates Plaintiffs' ability to ascertain the class and to address jurisdiction.

2.    **The Court Should Strike RapidCourt's General Objections.**

In response to every interrogatory and document request, RapidCourt broadly asserts a combination of general objections, which they categorize as "common specific objections," and include objections for relevance, overbreadth, and burden. *See, e.g.* Ex. 2 at 3-4, Ex. 3 at 2-3, Ex.

---

[5] Defendant's Objection and Answers to Plaintiffs' [Third] Set of Interrogatories are attached as Exhibit 6 and Requests for Production are attached as Exhibit 7. These requests were initially mislabeled as "Second" Set, but should properly be identified as the Third Set.
[6] Plaintiffs Rule 34 Request to Inspect is attached as Exhibit 8 and Defendant's Objections to Plaintiffs' Rule 34 Request to Inspect and Copy is attached as Exhibit 9.

4 at 2, Ex. 5 at 2-3. RapidCourt's general objections do not comply with the Federal Rules of Civil Procedure, which require objections to be stated with specificity. Courts universally reject the use of general objections. *See, e.g.*, *Cappetta v. GC Servs. Ltd. P'ship, No*., 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) (Lauck, J.) ("Just as with relevance objections, merely stating that a discovery request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection."); *Barb v. Brown's Buick, Inc.*, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010) ("Fed. R. Civ. P. 33 requires objections to discovery to be made with specificity. For that reason, this Court discourages the use of general objections."); *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 2013 WL 3660562, at *5 (W.D. Va. July 11, 2013) (finding a non-party offered "a raft of 'general objections' that are rather indiscriminate and oftentimes overlapping, based on, inter alia, privilege, undue burden, overbreadth, relevancy, vagueness, reasonable availability, proprietary information, and confidentiality."); *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable.").

RapidCourt disregarded its obligation to provide specific objections to Plaintiffs' discovery requests. Instead, it expressly made several broad objections and incorporated them in response to varying discovery requests. *See* Ex. 2 at 3-4. Regardless of a theoretical dispute regarding the degree of detail required by the Federal Rules, a party cannot assert a number of broad objections and simply incorporate them in response to varying discovery requests. Because RapidCourt's

general objections are not proper under the Federal Rules of Civil Procedure, they should be

stricken.[7]

### 3. RapidCourt has impermissibly and unilaterally narrowed the discovery requests relevant to Jurisdictional Discovery.

To further obstruct discovery, RapidCourt has impermissibly and unilaterally narrowed

Plaintiffs' discovery requests relevant to the jurisdictional inquiry. Specifically, RapidCourt states

as follows:

> RapidCourt objects [ ] because they seek information that is not relevant to
> Plaintiffs' contention that RapidCourt is subject to specific personal jurisdiction in
> the Commonwealth of Virginia. . . . Specific jurisdiction looks to whether "the
> plaintiffs' claims arise out of the activities [the defendant] directed at the forum."
> Further, at this stage, only the named Plaintiffs' claims are relevant to the
> jurisdictional analysis. Requests for information or documents related to records or
> services other than those relating to Plaintiffs Cross and Spendlove have no bearing
> on the question of whether RapidCourt is subject to specific personal jurisdiction
> in the Commonwealth of Virginia for Cross' and Spendlove's claims.

See, e.g., Ex. 2, at 3 (quoting Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278

(4th Cir. 2009)).[8] RapidCourt's response is unacceptable because it qualifies its document

production in two respects: (1) by producing only documents that it believes are "relevant"; and

---

[7] RapidCourt not only improperly uses boilerplate objections, but it also answers each request "subject to and without waiving the foregoing Objections." (See, e.g. Ex. 2, at 4). Such conduct has been admonished in this Circuit and other jurisdictions across the country because it is a conditional response that leaves the requesting party uncertain as to whether the request has actually been fully answered. Turnage v. Clarity Servs., Inc., 2015 WL 5092695, at *2 (E.D. Va. July 22, 2015) ("[T]he practice of providing answers 'subject to' objections is confusing and misleading."); Sherwin-Williams Co. v. JB Collision Servs., Inc., 2014 WL 3388871, at *3 (S.D. Cal. July 9, 2014) ("The responses are confusing and misleading because, for example, when a party responds to an interrogatory that is 'subject to' and 'without waiving its objections,' the propounder of the interrogatory is "left guessing as to whether the responding party has fully or only partially responded to the interrogatory.") (internal citations omitted); Consumer Elecs. Assn. v. Compras & Buys Magazine, Inc., 2008 WL 4327253 at *3 (S.D. Fla. 2008) (same).
[8] RapidCourt's "Common Specific Objections" to Plaintiffs' First Set of Requests for Production adds "[t]he same is true for requests for information or documents related to the procurement of records about individuals other than Plaintiffs Cross and Spendlove." Ex. 3, at 3.

(2) by impermissibly limiting its responses to only "information and documents" specifically related to Plaintiffs Cross' and Spendlove's claims.

> As to the first issue, when confronted with this precise conduct, another court explained:

> In response to many of Defendant's requests for production and interrogatories, Plaintiff asserts he has produced, or will produce, "relevant, non-privileged" responsive documents. Defendants argue use of this language implicitly challenges the relevancy of the request and such a challenge is procedurally improper. The Court agrees.
> . . .

> In other words, a party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that "all relevant, non-privileged" responsive information or documents have been, or will be, produced. If a party intends to withhold information or documents responsive to a discovery request based on lack of relevancy, an objection based on lack of relevancy must be lodged in the responsive pleading.

*Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 541 (D. Kan. 2006); *see also Alexander v. F.B.I.*, 1997 WL 1106579, at *1 (D.D.C. Dec. 22, 1997). Like *Johnson*, Plaintiffs request the Court to order RapidCourt to amend its responses to confirm that all documents have been produced without qualification.

Second, RapidCourt's interpretation of what information is relevant to the jurisdictional analysis is far too narrow.  In short, RapidCourt would seek to provide only evidence related to the specific transaction in which Spendlove and Cross's records were obtained and has withheld evidence related more broadly to RapidCourt's sale of records in Virginia, its procurement of records in Virginia, its business activities in Virginia, and its customers in Virginia. RapidCourt's position is inconsistent with this Court's jurisprudence.

Specific jurisdiction may be asserted over a nonresident defendant who has purposefully directed his or her activities at residents of the forum, and the litigation results from alleged injuries that arise out of, or relate to, those activities. *Helicopteros Nacionales de Colombia v. Hall*, 466

U.S. 408, 414 (1984). The Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists. Specifically, the Court must consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

As to the first factor, Judges Lauck and Hudson have explained that while "no clear formula [exists] for determining what constitutes 'purposeful availment,'" a court may consider the following factors: "whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business transactions; and whether the performance of contractual duties was to occur within the forum." *Reynolds Foil Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, *2–3 (E.D. Va. Mar. 10, 2010); *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2018 WL 6537151, *5 n.19 (E.D. Va. Dec. 12, 2018).

As to this factor, Plaintiffs have made a number of discovery requests that RapidCourt has refused to answer or qualified based upon its interpretation of the scope of specific jurisdiction. *See* Ex. 2 (ROGs 1,2, 3, 4, 5, 8); Ex. 3 (RFPs 4–7, 9–10, 12–14). For example, in response to Plaintiffs' request that RapidCourt "[d]escribe how your direct to source technology accesses

public records data from governmental sources in Virginia. . . ." Ex. 2 at 9 (ROG 8), RapidCourt

objected, stating:

> RapidCourt further objects to Interrogatory No. 8 on the grounds that it is overbroad
> and seeks information that is not relevant to the issue of whether RapidCourt is
> subject to specific personal jurisdiction in Virginia for Plaintiffs Cross' and
> Spendlove's claims. As explained in the Common Objections, specific jurisdiction
> looks to whether the activity giving rise to Plaintiffs' claims occurred in or was
> directed at Virginia. Whether RapidCourt's customers used its technology to access
> records from sources in Virginia unrelated to the records belonging to Plaintiffs
> Cross and Spendlove is therefore irrelevant to the question of specific personal
> jurisdiction over RapidCourt.

Ex. 2 at 9–10. Similarly, in response to Plaintiffs' request that RapidCourt "[p]roduce a copy of

all contracts or agreements between RapidCourt and any third party which pertain to the collection

of records from sources in Virginia or from sources which contain Virginia records which have

been in effect during the Class Period" Ex. 3 at 3 (RFP 6). RapidCourt objected, referring Plaintiffs

to its Common Specific Objections, and stating "[s]ubject to and without waiving the foregoing

Objections, RapidCourt refers Plaintiffs to those documents labeled RAPIDCOURT 7-17 [a

contract with Checkr, the entity that reported Spendlove and Cross's records]. Based on its

Objections, Defendant withholds documents that do not pertain to Plaintiffs' claims." Ex. 3 at 5–

6.[9]

RapidCourt's position is impermissible, as courts in this District have made clear that a

defendant's contact with the forum state, particularly when the defendant reaches into the forum

state to conduct or solicit business, is relevant to the issue of specific jurisdiction. *Reynolds Foil*,

2010 WL 1225620, at *3; *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) (explaining that the

---

[9]  Similar requests were met with like objections. Ex. 6 at 2 (ROG 15), 3 (ROG 16), 4 (ROG 17).
Each of these requests ask RapidCourt to identify Virginia entities billed for RCXpress, Virginia
customers, or third parties with whom RapidCourt had a contract in the past five years and who
maintain a Virginia address.  RapidCourt's similarly objects on the basis that such requests are not
relevant to the jurisdictional inquiry.

relevant inquiry focuses on defendant's intentional conduct towards the forum state, stating "[a]lthough we recognized that the defendant's' activities focused on the plaintiff, our jurisdictional inquiry focused on the relationship among the defendant, the forum, and the litigation.") (internal quotations omitted). Here, RapidCourt is engaged in one thing: the sale and transmission of records to customers. That is specifically the business that harmed Plaintiffs. Thus, whether RapidCourt solicited customers in Virginia, held contracts with Virginia business for the purpose of obtaining or transmitting records to customers, or accessed/transmitted Virginia records to third parties for compensation is directly relevant to the issue of specific jurisdiction. Accordingly, Plaintiffs request the Court to strike RapidCourt's objections and order it to respond fully to Plaintiffs' Interrogatories and Requests for Production.

### 4.  RapidCourt has impermissibly and unilaterally narrowed the discovery requests relevant to Class Certification.

RapidCourt has withheld information and documentation relevant to class certification, specifically information related to putative class members, RapidCourt's designation as a CRA, and the identity and communications with third-party vendors.

Under Rule 26, Plaintiffs may discover any materials that are not privileged if the materials requested are reasonably calculated to lead to admissible evidence. Rule 26 is very broad, permitting a wide range of inquiry at the pre-trial stage. If there is any possibility that the information sought may be relevant, the court should permit the discovery. *Hickman v. Taylor*, 329 U.S. 495 (1947). The policy underlying this Rule is to promote fair litigation, through mutual knowledge of relevant facts. Therefore, the rule is to be liberally interpreted in favor of granting discovery. *Id.* at 597.

Courts considering motions to compel have held that the party objecting to production of documents has the burden of proving that the records are either not relevant or that the burden of

production is so great as to outweigh the need for fair discovery and the goals of discovery. *Oleson v. Kmart*, 175 F.R.D. 560, 565 (Kan. 1997). The party seeking to deny discovery has an affirmative duty to articulate facts, as opposed to mere conclusions, regarding the alleged lack of relevancy or burden.  RapidCourt has yet to provide a factual and specific basis to support *any* of its objections. The following requests are at issue:

        <u>Putative Class Member information.</u>

        RFP 22: Produce all documents that reflect or provide the information necessary to determine the names and identities of each putative class member. Ex. 5 at 5.

        RFP 23: Produce all documents referring to the amount of payment made to any independent contractor, subcontractor, vendor, or related entity that provided you with any information regarding the Plaintiffs and putative class members. Ex. 5 at 5-6.

        As to RFP 22, RapidCourt asserts a host of objections without support: that the request improperly shifts a burden to Defendant, that the request seeks a legal determination, that the request is premature and seeks documents that are not relevant nor proportional to the needs of the case. As to RFP 23, RapidCourt objects on relevance and proportionality without explanation and states "the amount of the payment made to sources of information has no bearing on whether a putative class should be certified." Ex. 5 at 6. RapidCourt answered subject to and without waiving its objections, and is withholding documents. Additionally, RapidCourt continues to search for or produce documents relevant to "Plaintiffs' records" as opposed to all putative class member records. Ex. 5 at 6.

        RapidCourt's objections are improper and its answers incomplete. As to ascertainability, RapidCourt, subject to its Common Specific Objection, essentially states that until recently, "RapidCourt as a matter of course did not maintain the scope of data necessary to potentially

identify the number of individuals requested . . . ." Ex. 2 at 6 (ROG 2); Ex. 4 at 4 (ROG 11-12). Plaintiffs have learned through third-party discovery, however, that RapidCourt's subscribers often retain this information in their records. Ex. 10 (RAPIDCOURT_0000880-0000885) (email from Apex Background Check, Inc.). Therefore, the identity of those customers and any communications with RapidCourt are relevant to class certification (as well as jurisdiction). Plaintiffs have been prejudiced by the delay caused by RapidCourt as Plaintiffs have been unable to otherwise obtain this information. Such is exacerbated by RapidCourt's failure to provide Plaintiffs with contracts with its customers, as Plaintiffs do not know the full list of third parties to whom to issue Rule 45 subpoenas for class member information.

RapidCourt's Characterization as a Consumer Reporting Agency.

RFP 28: Produce all documents evaluating whether you are subject to the requirements of the Fair Credit reporting Act created or relied upon during the Class Period.  Ex. 5 at 7.

RapidCourt objected, asserting relevance, proportionality, and overbreadth. RapidCourt is withholding relevant information.

Agreements or Contracts with Public Record Vendors or Third Parties to Provide Public Records and Agreements or Contracts with Subscribers.

RFP 29: Produce all agreements that were in effect during the Class Period with any public record vendor or any entity which supplied RapidCourt with public record information on Plaintiffs. Ex. 5 at 8.

RFP 30: Produce all agreements that were in effect during the Class Period with any entity to whom RapidCourt provided public record information during the Class Period.  This request includes, but is not limited to, your contract(s) with Checkr. Ex. 5 at 8.

RFP 31: Produce all agreements that were in effect during the Class Period with any end user to whom RapidCourt provided public record information during the Class Period. Ex. 5 at 9.

RFP 37: Produce documents sufficient to show the sources and/or vendors of the information RapidCourt or any related entities obtained and used to provide public record information to their customers in connection with employment purposes or background checks during the class period. Ex. 5 at 12.

Again, RapidCourt asserts a host of objections to include relevancy and proportionality. Specifically, RapidCourt argues that "[n]either the existence nor the terms of any agreement between RapidCourt and an entity who used RapidCourt's services to access public record information would have any bearing on whether a putative class should be certified." Ex. 5 at 9. RapidCourt is withholding documents related to specific contracts and agreements with subscribers. And again, RapidCourt is only producing information specific to the individual transactions related to Spendlove and Cross. Ex. 5 at 10 (producing only Checkr agreement).

As explained above, Plaintiffs' requests are both relevant and proper, and RapidCourt has impermissibly narrowed the requests to only the customer that obtained Spendlove's and Cross's reports and has otherwise refused to provide any information about other customers.

Policy manuals related to maximum possible accuracy.

RFP 41: Produce all policy manuals, procedure manuals or other documents, which address your policies, practices or procedures designed to assure the maximum possible accuracy of the consumer reports that you sell. Ex. 5 at 41.

RapidCourt objects, asserting that such requests are not relevant nor proportional to the needs of the case. But this claim of proportionality is wholly unsupported. To be sure, it is difficult to imagine how it would be disproportional to request information relevant to claims that challenge the very way in which an entity conducts the entirety of its business.

5.      RapidCourt Refuses to Allow a Meaningful Inspection or Production of its Database.

Plaintiffs served a request for inspection upon Defendant, seeking to inspect (1) Defendant's user interface for clients accessing Virginia records and to conduct searches using the interface, (2) screenshots of the interface described in point one, (3) the software, including source code, that runs RapidCourt's RCX system, and (4) the ability to access the system as a user, to run searches on the Plaintiffs themselves.[10]  Ex. 8, Request for Inspection. Similarly, Plaintiffs have sought RapidCourt's database. Ex. 9 (RFP 22), Defendant's Objections.  Defendant has responded, by stating it will allow Plaintiffs a limited form of the access requested in (1) and (4), but nothing else. *Id*.  Specifically, Defendant has offered to allow Plaintiffs to run limited searches using a "dummy" account set up on its system. The account will be set up to "mimic" the access that Checkr had, which means it will utilize an API connection and will only utilize what RapidCourt refers to as its RCX "direct-to-source" technology.

While this capability will offer Plaintiffs some minimal insight in to the kinds of records that users see when they use Defendant's system, there are significant limitations on the utility of Defendant's offer.  First, Defendant's offer will only provide insight into one way that Defendant's users can access data. Others of Defendant's customers interface with Defendant in other ways, and access different product lines.  Plaintiffs' inspection should not be constrained to only a single kind of interface, relevant to only a single kind of customer.

---

[10] Plaintiffs also sought similar information in Plaintiffs' Second Set of Requests for Production, specifically in RFP Nos. 34, 39, and 44, as well as Plaintiffs Third Set of Request for Production, RFP Nos. 45, 46, 47, 48, which seek documents or database exports to show the mechanical means by which RapidCourt receives public record information, manuals that describe the computer program or software, and any other documents which show the method in which the technology works. Similar to its objections related to the Inspection, RapidCourt has objected, arguing that such requests are vague, ambiguous, not relevant to the issue of class certification, and not proportional to the needs of the case.  See Ex. 5 at 2-3 (Common Specific Objection), 11 (RFP 34), 13 (RFP 39), 15-16 (RFP 44); Ex. 7 at 2 (RFP 45), 3 (RFP 46, 47), 4 (RFP 48). These objections are similarly improper for the reasons discussed below.

Second, Defendant's refusal to provide access to the underlying software and source code significantly hinders Plaintiffs' ability to understand the process by which the results the user might view are generated. Defendant's refusal is akin to allowing Plaintiffs to view the ingredients for a meal, and to view the meal that is made with the ingredients, while refusing to allow Plaintiffs to view the recipe that describes how the meal was made. The jurisdictional and class certification issues in this case demand that Plaintiffs understand not only how the software looks from a user's perspective, or what kinds of results it provides to the user, but also that Plaintiffs understand *how* the system works on the back end to generate the results that are provided based on the user's input.

The precise mechanics of Defendant's systems matter. Defendant alleges that it is a "direct-to-source" technology that allows Defendant's clients to access court records directly. (ECF No. 16, 16-1.) Based on just its bald assertion of how the technology works, Defendant argues that it lacks sufficient contacts with Virginia for this Court to exercise jurisdiction. But RapidCourt's argument is tethered entirely to its own self-serving and unsupported description of how its technology operates. Pursuant to the Court's order allowing jurisdictional discovery (ECF No 46), Plaintiffs must be allowed to probe behind Defendant's self-serving description of its systems to determine precisely how the technology at issue works and how much contact Defendant's systems have with Virginia sources.

The mechanics of Defendant's system are also relevant to the merits of this litigation. In order to establish that Defendant is subject to the Fair Credit Reporting Act, Plaintiffs must establish that Defendant is a CRA, which the Act defines as an entity which "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15

U.S.C. § 1681a(f).   Access to the underlying source code and software is critical to understand the extent to which the software interacts with data retrieved from the courts in such a way as to constitute "evaluating" or "assembling" such data.

Plaintiffs' proposed inspection would simply now allow Plaintiffs to meaningfully probe these issues.  Only allowing Plaintiffs to access one aspect of Defendant's system as dummy users will provide only extremely limited insight into what is going on behind the scenes.  It would not make clear where the search results are coming from (Virginia Courts or Defendant's own systems), nor would it make clear the path the data took in being delivered as results to the end user.  That precise path is meaningful.  If the data at issue truly goes from the Virginia courts to the end user without any modification, evaluation or assembly whatsoever, that has one set of legal implications, but if it goes from the Virginia courts to Defendant and then on to the end user and/or if it is modified, evaluated or assembled in any way, that has a very different set of legal implications.  Defendant's refusal to provide the requested inspection of source code and other information about how the system operates strongly suggest that the latter is the truth.

To compel the production of source code, the requesting party need only show the code is relevant and necessary to the prosecution of their claims. *In re Apple & AT & TM Antitrust Litig*., 2010 WL 1240295, at *2 (N.D. Cal. 2010). Courts routinely compel consumer reporting agencies to produce source code and algorithms demonstrating how their software works when the underlying operations are relevant to the litigation. *See Barclay v. Experian Information Solutions, Inc.*, No. 1:14-cv-1200 ECF No. 34 (E.D. Va. 2015) (ordering Defendant to respond to discovery seeking information on its procedures for assigning information to a consumer's file, including its matching procedures and algorithms); *see also Fair Isaac Corp. v. Equifax, Inc.*, No. CIV. 06-

4112 ADM/JSM, 2007 WL 2791168 at *5 (D. Minn. Sept. 25, 2007) (ordering production of defendant credit reporting agency's scoring algorithm, over defendant's trade secrets objection).

In addition to seeking access to the code that governs the manner in which Defendant's system operates, Plaintiffs have also sought to inspect RapidCourt's database and its database structure. This is necessary both to understand how Defendant's software operates, and also to allow Plaintiffs to evaluate the credibility of Defendant's assertions regarding its inability to identify class members. This same issue arose in *Henderson v. Corelogic National Background Data, LLC*, in which this Court ordered that Corelogic produce its entire database. ECF 359, *Henderson v. Corelogic Nat'l Background Data, LLC*, Case No. 3:12-cv-97 (E.D. Va. Nov. 1, 2016).

Defendant's objections are meritless.  Defendant claims that allowing inspection would "violate privacy and data security laws and expose RapidCourt to criminal and civil liability" fails to specify what laws might be broken, or how liability might arise, nor does it attempt to explain how the Protective Order in force in this case fails to provide Defendant with the needed protections. Whatever concerns Defendant has about the security of its algorithms or the underlying database, such concerns can be addressed through the entry of an appropriate protective order. In *Henderson*, plaintiffs' counsel (the same Plaintiffs' Counsel in this case), entered into a protective order specifically related to the production of the database in order to properly protect defendant's information. Plaintiffs have offered similar protections here in order to address RapidCourt's conclusory and unsupported statement that responding to Plaintiffs' requests for source code and for data will pose unspecified and unquantified risks to RapidCourt.  RapidCourt has refused Plaintiffs' offer to enter into a special protective order relating to its source code and database, while at the same time failing to provide any support for its boilerplate assertion that the

19

discovery Plaintiffs seek is "disproportionate." Defendant's effort to withhold clearly relevant information based on unspecified risks and burdens is improper. The software and source code are relevant and the Court should order Defendant to allow Plaintiffs to inspect them. The database is similarly relevant, and the Court should compel its production.

## II.   Rule 37 Issues

### A.   The Court Should Prohibit RapidCourt from Using Previously Undisclosed Evidence or Witnesses.

#### 1.   RapidCourt has failed to disclose and supplement relevant information.

Aside from the various sanctions remedies provided by Rules 26, 37(a), and 37(b), the Defendant is also subject to Rule 37(c)(1).  Defendant cannot be permitted to use documents and evidence that it has refused to disclose and provide pursuant to Rule 26(a)(1) and Rule 26(e). Unlike conventional discovery, a party's disclosure obligations are "self-executing."  If a party does not properly and timely comply with Rule 26(e), it may not use the evidence it failed to disclose or supplement in a timely fashion. Fed. R. Civ. P. 37(c).  *Barksdale v. E & M Transp., Inc.*, 3:10-cv-140, 2010 WL 4534954 (E.D. Va. Oct. 27, 2010) (finding that the court "must impose sanctions" for under Rule 37(c)(1) where there was no harmless error or substantial justification). Rule 37(c)(1) provides in pertinent part

> *Failure to Disclose, to Supplement an Earlier Response, or to Admit.* – (1) Failure to Disclose or Supplement.  If a party fails to provide information or to identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion or after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, cause by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Exclusion of evidence is the only appropriate remedy for a party's complete failure to disclose it, "[Rule] 37(c)(1) 'provides that a party who fails to [provide information or] identify a witness as required by Rule 26(a) or (e) is not allowed to use that [information or] witness to supply evidence on a motion.'" *Bland v. Fairfax County, Va.*, 1:10-cv-1030 JCC/JFA, 2011 WL 1660630 (E.D. Va. May 3, 2011) (quoting *Hoyle v. Freightliner, LLC,* 650 F.3d 321 (4th Cir. 2011). This is consistent with the Advisory Committee notes to the 1993 Amendment of Fed. R. Civ. P. 37(c), which explains:

> Subdivision (c). The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A).Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56.

The only exceptions in Rule 37(c) are for circumstances in which the failure to disclose was with "substantial justification" or in which the failure to disclose was "harmless." *Barksdale v. E & M Transp., Inc.*, 3:10CV140, 2010 WL 4534954, at *3. Neither of these limited exceptions applies in this case.

The Advisory Committee Notes offer examples under which these conditions might apply, which courts have consistently done since their adoption. *See, e.g.*, *Scott v. GMAC Mortgage, LLC***,** No. 10-cv-24-NKM (W.D. Va. April 14, 2011) (finding GMAC's conduct to be egregious and accordingly ordered sanctions for failure to timely comply with discovery, including the sanction of entry of default and award of attorney fees). They include instances in which the omission was limited, for a witness otherwise known to both parties, or when the negligent party was a *pro se* litigant. *Id.; accord Barksdale*, 2010 WL 4534954, at *3–4. None of these apply in the present case. The Advisory Committee Notes further explain that:

Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures. In the latter situation, however, exclusion would be proper if the requirement for disclosure had been called to the litigant's attention by either the court or another party.

One of the cases which is most frequently cited on this issue, even outside this District and Circuit, is *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721 (E.D. Va. 2001) (Payne, J.). In the Court's detailed analysis of the appropriate standard and remedy under Rule 37(c), the Court considered the severity of the exclusion remedy and determined the standard by which the remedy should be enforced. The Court applied the *Burlington Insurance* test to consider the following five factors: (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony. 145 F. Supp.2d at 726, 727-734. Importantly, there is no "bad faith" element, and even an innocent omission cannot constitute "substantial justification." *Southern States Rack & Fixture v. Sherwin-Williams Co.*, 318 F.3d at 596; *Scott v. GMAC*, 3:10CV24-NKM, at 11-12. As the Court explained in *Rambus*,

> [T]he plain language of the rule contains no requirement for bad faith or callous disregard of the discovery rules. In fact, the rule is rather harsh in that it automatically imposes the preclusion sanction unless the non-complying party can show that there is substantial justification for the failure to make the disclosure, and that the failure was harmless.

145 F. Supp. 2d at 727. There can be no doubt that Plaintiffs have been prejudiced by the Defendant's failure to comply with its discovery obligations to timely disclose documents that support its defenses. *Scott*, 3:10-cv-24-NKM, at 11-12.

Instead of making mandatory disclosures and producing responsive documents in discovery, RapidCourt has engaged in the type of gamesmanship prohibited by the Federal Rules by failing to produce documents and make disclosures, all the while promising to produce more information during lengthy meet and confers. The Defendant has the same obligation as all parties to litigation in this court: to proceed without gamesmanship in the conduct of discovery. It must respond truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why it cannot respond. *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 220-21 (N.D. W. Va. 2007) (citing *Hansel v. Shell Oil Corp.,* 169 F.R.D. 303, 305 (E.D. Pa. 1996)). Gamesmanship to evade answering as required is not allowed. *Id.*

Rule 37(c) authorizes the Court to levy sanctions for a party's specific conduct, or lack thereof:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule and may include informing the jury of the failure to make the disclosure.

FED. R. CIV. P. 37(c)(1).  Without substantial justification for the failure to disclose information required under Rule 26(a), a party is automatically excluded from using that information at trial. *Rambus*, 145 F. Supp. 2d at 724.  A party invoking Rule 37(c)(1) sanctions must demonstrate that the offending party failed "to disclose the evidence in question earlier in the proceedings."  *Id.* at 724, n.4 (citing 7 MOORE'S FEDERAL PRACTICE § 37.60[2][a] (Matthew Bender 3d ed.)).  If this is accomplished, the offending party can avoid sanctions by showing a substantial justification for the failure to disclose.  *Id.*

A showing of substantial justification cannot happen in this case. Despite Plaintiffs' good faith effort in the meet and confer process and the hope that the Defendant would fulfill its obligation to participate in the process, RapidCourt just has not provided any justification cognizable under the Rules and the law of this District and Division, let alone a substantial justification for failing to supplement its disclosures, provide the documents requested in discovery, disclose the identity of witnesses, and has implemented an abusive discovery tactic despite the Court's orders and should therefore be sanctioned. *Scott*, 3:10-cv-24-NKM, at 11-12. If RapidCourt truly believed it had a legitimate basis to not supplement its mandatory disclosures, withhold documents it knows have been produced or been ordered to produce in other cases, it should have moved for a protective order. It has not so moved, however unseasonable, as such motion would nonetheless be destined to fail.[11]

These factors favor granting this Motion.

### 2.  RapidCourt has refused to produce relevant evidence in response to valid discovery requests.

Organizational Chart of Entities. Plaintiffs' requested that RapidCourt "Produce an organizational chart for RapidCourt and all related companies." (RFP 5, Ex. 2.) RapidCourt objected, asserting that "related companies" is vague and ambiguous.  The Parties met and conferred. Plaintiffs explained that they understood RapidCourt to be owned by SyntaCorp, LLC and associated with Background Investigation Bureau, LLC, and interpreted "related companies"

---

[11] It is now entirely too late for the Defendant to seek a protective order, which motion would have to be rejected as untimely. *Ayers*, 240 F.R.D. at 221 (citing *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991); *see also*, *Kolon Indus., Inc. v. E.I. du Pont de Nemours & Co.*, 3:11-cv-622, 2012 WL 560226, at *10 (E.D. Va. Feb. 21, 2012) (explaining that a recusal motion was untimely when the movant failed earlier to move for recusal despite that it had knowledge of all relevant facts for over a year but did not file a motion until it perceived the risk of an adverse ruling).

to mean at least those two organizations or other similar entities unknown to Plaintiffs.  Defendant stood on its objection and has refused to produce organizational charts for any entity other than RapidCourt.

Because RapidCourt has failed to produce information related to other related entities, Plaintiffs seek to preclude RapidCourt from producing any evidence to counter Plaintiffs' arguments that RapidCourt and its related entities are one cohesive entity.

Evidence Associated with any Burden on RapidCourt to Litigate this Matter in Virginia. Plaintiffs requests that RapidCourt "Produce any documents you contend demonstrate any burden associated with litigating this matter in Virginia." Ex. 3, RFP 15. RapidCourt referred Plaintiffs to RAPIDCOURT 6 (which identifies RapidCourt as a North Carolina entity). The Court should prohibit RapidCourt from producing any evidence, other than RAPIDCOURT 6, in support of its Motion to Transfer this case to the Western District of North Carolina. (ECF 16.) One primary consideration in the transfer analysis under 28 U.S.C. § 1404(a) is the convenience of the parties and witnesses. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Evidence of the inconvenience to one party is therefore an important factor in the transfer decision. Defendant has chosen not to produce any evidence on that factor and should not now be permitted to produce that evidence, especially considering the very short discovery period.

RapidCourt's Contracts with Third Parties. Plaintiffs made numerous requests to RapidCourt to produce contracts or other documents evidencing RapidCourt's use of third parties or vendors to collect Virginia records.  Those requests, as well as RapidCourt's blanket refusal to produce, are detailed above.  Plaintiffs seek to preclude RapidCourt from later producing evidence that it does not collect Virginia records through third parties.

Evidence of FCRA Compliance Procedures. RapidCourt should be precluded from presenting any defense that it had any procedure to attempt compliance with 15 U.S.C. §§ 1681c, 1681k, or 1681g. RapidCourt has not disclosed or produced substantive material that demonstrates it had a policy governing these requirements of the FCRA. RapidCourt's complete lack of response on this issue establishes that it did not have a policy or procedure in place regarding these FCRA sections. *See* Ex. 4 at 3 (ROG 10); Ex. 5 at 5 (RFP 24, 25), 6 (RFP 26-27). RapidCourt should be precluded from introducing a witness or documents in any motion, hearing or trial that purports to show compliance with §§ 1681c, 1681k, or 1681g.

Evidence Regarding Whether Accuracy is an Individualized Question. RapidCourt should be precluded from presenting any evidence that accuracy is an individualized question. RapidCourt is withholding documents relating to accuracy and claims to have no documents regarding its knowledge of accuracy of records from different jurisdictions. Ex. 5 at 14 (RFP 41), 15 (RFP 43). RapidCourt asserts that such issues are not relevant to class certification nor proportional to the needs of the case. Ex. 5 at 2 (Common Specific Objections). RapidCourt should therefore be precluded from presenting evidence or arguing that accuracy is relevant to class certification.

At this point, Plaintiffs have been prejudiced by RapidCourt's gamesmanship and dilatory behavior.  Jurisdictional discovery closes in less than a month, and class discovery shortly thereafter. Plaintiffs have been prejudiced by the delay created by RapidCourt.

While there is not yet a trial setting for Defendants' improper conduct to affect, Defendants' omissions will certainly disrupt significant milestones of the case—the question of jurisdiction and class certification. By meeting-and-conferring and offering to stipulate when Defendant would not comply with its discovery duties, Plaintiffs sought to avoid just this problem and engage in the self-help that the Court encourages. Defendant refused those requests, hampering

Plaintiffs' ability to learn more about the particulars of Class Members and Defendant's conduct in Virginia. The Court has already indicated its position that this phase of discovery should be proceeding judiciously.  The Court should find this factor favors granting this Motion.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court to grant this Motion to Compel in its entirety.

Respectfully submitted,

**OWEN SPENDLOVE and JACOB CROSS,**
*individually and as representatives of the class,*

By: /s/ *Leonard A. Bennett*
   Leonard A. Bennett, VSB #37523
   Elizabeth W. Hanes, VSB #75574
   Craig C. Marchiando, VSB #89736
   **CONSUMER LITIGATION ASSOCIATES, P.C.**
   763 J. Clyde Morris Blvd., Ste. 1-A
   Newport News, VA 23601
   Telephone: (757) 930-3660
   Facsimile: (757) 930-3662
   Email: lenbennett@clalegal.com
   Email: elizabeth@clalegal.com
   Email: craig@clalegal.com

   E. Michelle Drake*
   Joseph C. Hashmall*
   **BERGER MONTAGUE PC**
   43 SE Main St, Suite 505
   Minneapolis, MN 55414
   Tel.: (612) 594-5999
   Fax: (612) 584-4470
   Email: emdrake@bm.net
   Email: jhashmall@bm.net
   *admitted *pro hac vice*

   *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


By: /s/          *Leonard A. Bennett*
Leonard A. Bennett, VSB #37523
Elizabeth W. Hanes, VSB #75574
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: elizabeth@clalegal.com
Email: craig@clalegal.com